**In re Cecil TRAMMELL, Relator.**

**Cecil Trammell, Appellant**

**v.**

**Galaxy Ranch School, L.P., and Bradford Larsen, Appellees.**

**No. 05–07–00351–CV.**

Court of Appeals of Texas, Dallas.

Feb. 27, 2008.

Tom C. Clark, Julie L. Dupont, Dealey, Zimmermann, Clark, Malouf & MacFarlane, PC, Dallas, for Appellant.

C. Jeffrey Novel, Robert N. LeMay, Kane, Russell, Coleman & Logan, P.C., Dallas, for Appellee.

Before Justices MOSELEY, LANG, and MAZZANT.

## OPINION

Opinion by Justice LANG.

In these consolidated proceedings, Cecil Trammell filed a petition for a writ of mandamus and an interlocutory appeal arguing the trial court abused its discretion when it denied his motion to compel arbitration. This case arises out of a lawsuit filed by C & K Concrete Construction, Inc., against Galaxy Ranch School, L.P., and Bradford Larsen, and which includes Galaxy Ranch and Larsen's counterclaims against C & K Concrete and Trammell, a shareholder of C & K Concrete and its president.

We conclude the trial court did not err when it denied Trammell's motion to compel arbitration. The trial court's order denying Trammell's motion to compel arbitration is affirmed. Also, Trammell's petition for a writ of mandamus is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Galaxy Ranch contracted with Larsen to build a day-care, after-care, and preschool in Rockwall, Texas. Larsen contracted with C & K Concrete to furnish labor, materials, forms, equipment, supplies, and applicable taxes for turn-key, cast-in-place concrete. The contract between Larsen and C & K Concrete is dated February 1, 2005, and contains an arbitration clause that requires all claims arising out of the contract to be settled by arbitration through the American Arbitration Association. Trammell is the president and a shareholder of C & K Concrete.

C & K Concrete's corporate privileges were declared forfeited by the Texas Comptroller of Public Accounts. The comptroller certified to the Texas Secretary of State that there were grounds for forfeiture of C & K Concrete's charter. On October 28, 2005, the Texas Secretary of State declared forfeited C & K Concrete's corporate charter because C & K Concrete had not revived its corporate privileges within 120 days after its corporate privileges were forfeited and the comptroller determined C & K Concrete did not have assets from which a judgment for any tax, penalty, or court costs may be satisfied.

On January 9, 2006, Trammell filed, on C & K Concrete's behalf, a mechanic's and materialman's lien affidavit against Galaxy Ranch and Larsen claiming the amount of $41,020.44 for labor and materials furnished during October and November of 2005. Trammell's affidavit also states notice of claim was sent to Galaxy Ranch and Larsen on October 26, 2005, and January 9, 2006. C & K Concrete's corporate charter was reinstated on February 7, 2006.

On March 14, 2006, C & K Concrete sued Galaxy Ranch and Larsen alleging breach of contract and violation of the Texas Prompt Payment Act, and seeking foreclosure on the mechanics and materialman's lien, and attorneys' fees. On May 23, 2006, Galaxy Ranch and Larsen filed their answer generally denying the claims. Then, on October 18, 2006, C & K Concrete filed a motion to compel arbitration, requesting the trial court to abate the lawsuit it had filed, compel Galaxy Ranch and Larsen to defend against its claims in arbitration, and to assess all costs against Galaxy Ranch and Larsen. On October 25, 2006, Galaxy Ranch and Larsen filed counterclaims against C & K Concrete alleging breach of contract, breach of express warranty, violations of the deceptive

trade practices act, negligence, and requesting a declaratory judgment that the mechanics and materialman's lien is invalid, and attorneys' fees.

On November 9, 2006, the trial court held a hearing on C & K Concrete's motion to compel arbitration. On December 1, 2006, the trial court denied C & K Concrete's motion to compel arbitration. C & K Concrete has sought no relief from this Court, or otherwise, respecting the trial court's order denying its motion to compel arbitration.

On December 5, 2006, C & K Concrete amended its petition to add a claim that it is entitled to recover payment for services and goods from Galaxy Ranch and Larsen under the equitable theory of quantum meruit. Also, on December 5, 2006, C & K Concrete filed a plea in abatement and answer generally denying Galaxy Ranch and Larsen's counterclaims.

On December 27, 2006, Galaxy Ranch and Larsen filed their first amended counterclaims specifically adding Trammel as a party and alleging he is an officer and shareholder of C & K Concrete. They claimed Trammell is "personally liable for [C & K Concrete's] debts and tortious conduct due to the forfeiture of [C & K Concrete's] corporate charter." On January 26, 2007, Trammell filed a plea in abatement and answer generally denying the claims. On January 31, 2007, Trammel filed a motion to compel arbitration stating that, although "C & K Concrete may have waived arbitration, [ ] Trammell has not." In his motion, Trammell argued Galaxy Ranch and Larsen's counterclaims against him arise from the contract between C & K Concrete and Larsen, and as a result, Trammell is entitled to compel all of the parties to arbitrate their disputes.

On February 21, 2007, Galaxy Ranch and Larsen responded to Trammell's motion to compel arbitration arguing: (1) C & K Concrete's waiver of the arbitration clause is binding on Trammell; (2) C & K Concrete and Trammell should be treated as the same party for purposes of the lawsuit because C & K Concrete forfeited its corporate charter from October 28, 2005 through February 7, 2006, the time period relevant to the lawsuit, and as a result, Trammell, an officer and shareholder of C & K Concrete, is personally liable for the corporation's debts pursuant to section 171.255 of the Texas Tax Code; (3) Trammell waived any right to arbitrate by engaging in discovery and participating in mediation; (4) Galaxy Ranch is not a signatory to the contract; and (5) Galaxy Ranch has asserted claims that fall outside the scope of the contract between Larsen and C & K Concrete. On February 22, 2007, the trial court held a hearing on Trammell's motion to compel arbitration and on March 14, 2007, the trial court denied the motion.

Trammell filed a petition for a writ of mandamus and an interlocutory appeal arguing the trial court abused its discretion when it denied his motion to compel arbitration. Also, Trammell filed an emergency motion to stay the trial court's proceedings. On April 10, 2007, this Court granted Trammell's motion and stayed the trial court's proceedings in cause no. 1–06–218 until further order of this Court.

## II. APPEAL OF ORDER DENYING ARBITRATION

In his interlocutory appeal, Trammell raises seven issues arguing the trial court erred when it denied his motion to compel arbitration because: (1) he proved the existence of a valid contract and the claims arise from that contract; (2) Larsen, a signatory to the contract, seeks to hold him liable, as a nonsignatory, for claims that arise from the contract; (3) Galaxy Ranch, an assignee of the contract, sued

him by claiming benefits of that same contract; (4) the evidence is insufficient to show Trammell waived his right to compel arbitration; (5) the evidence is insufficient to show that C & K Concrete's forfeiture of its charter waived Trammell's right to compel arbitration; (6) there is no evidence to support a finding that Trammell waived his right to arbitrate; and (7) as a matter of law, the arbitrator should determine waiver and any other defenses.

## A. Standard of Review

■ In an interlocutory appeal, when an appellate court reviews an order denying arbitration under the Texas Arbitration Act (TAA) it applies a no-evidence standard to the trial court's factual determinations and a de novo standard to legal determinations. *See Dewey v. Wegner*, 138 S.W.3d 591, 597 (Tex.App.-Houston [14th Dist.] 2004, no pet.). When reviewing the trial court's factual determinations under the no-evidence standard, an appellate court must credit the favorable evidence if a reasonable fact-finder could and disregard the contrary evidence unless a reasonable fact-finder could not. *See Kroger Tex. Ltd. v. Suberu*, 216 S.W.3d 788, 793 (Tex.2006) (legal sufficiency review of jury verdict); *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex.2005) (legal sufficiency review of summary judgment). An appellate court will sustain a no-evidence point of error when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003); *see Wilson*, 168 S.W.3d at 809. However, when the facts relevant to the arbitration issue are not disputed, an appellate court is presented only with issues of law and reviews the trial court's order de novo. *See Dewey*, 138 S.W.3d at 597.

## B. Applicable Law

### 1. Arbitration

■ Under the TAA, a court shall order the parties to arbitrate on the application of any party showing: (1) an agreement to arbitrate; and (2) the opposing party's refusal to arbitrate. Tex. Civ. Prac. & Rem.Code Ann. § 171.021(a) (Vernon 2005). Arbitration cannot be compelled unless it falls within the scope of a valid arbitration agreement. *See Meyer v. WMCO–GP, L.L.C.*, 211 S.W.3d 302, 305 (Tex.2006). Arbitrability turns on the substance of a claim. *See In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 190 (Tex.2007) (orig.proceeding). Parties to an arbitration agreement may not evade arbitration through artful pleading. *See id.* at 188. If a plaintiff's choice between suing the corporation or suing the employee determines whether an arbitration agreement is binding, then such agreements have been rendered illusory on one side. *See id.* at 189.

■ A person who has agreed to arbitrate disputes with one party may in some cases be required to arbitrate related disputes with others. *See Meyer*, 211 S.W.3d at 304. Sometimes, a person who is not a party to the agreement can compel arbitration with one who is, and likewise, a party to the agreement can compel arbitration with one who is not. *See Meyer*, 211 S.W.3d at 305. However, a corporate relationship is generally not enough to bind a nonsignatory to an arbitration agreement. *See In re Merrill Lynch*, 235 S.W.3d at 191. Also, arbitration is not required merely because two claims arise from the same transaction. *See id.* at 192. A person may be equitably estopped from

refusing to arbitrate when he seeks by his claim "to derive a direct benefit from the contract containing the arbitration provision." *See Meyer*, 211 S.W.3d at 305.

 Equitable estoppel applies when a nonsignatory seeks a direct benefit from a contract with an arbitration clause. *See In re Merrill Lynch*, 235 S.W.3d at 191. That is, it applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. *See Meyer*, 211 S.W.3d at 306 (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir.2000)). When each of a signatory's claims against a nonsignatory references or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. *See id.* (quoting *Grigson*, 210 F.3d at 527). When a party's right to recover and its damages depend on the agreement containing the arbitration provision, the party is relying on the agreement for its claims. *See id.* at 307. However, arbitration cannot be compelled based solely on substantially interdependent and concerted misconduct. *See In re Merrill Lynch*, 235 S.W.3d at 191 (rejecting second prong of *Grigson* and implicitly overruling portion of *Meyer*). Further, equitable estoppel cannot give nonsignatories a greater right to arbitration than the signatories themselves have. *See Meyer*, 211 S.W.3d at 306.

## 2. Forfeiture of Corporate Privileges and Charter, and Liability of Corporation's Officers and Directors

Pursuant to section 171.251 of the Texas Tax Code, the comptroller shall forfeit the corporate privileges of a corporation on which the franchise tax is imposed if the corporation: (1) does not file the required report within 45 days of the date the notice of forfeiture is mailed; (2) does not pay the tax imposed within 45 days of the date the notice of forfeiture is mailed or does not pay within those 45 days a penalty imposed relating to that tax; or (3) does not permit the comptroller to examine the corporate records. *See* TEX. TAX CODE ANN. § 171.251 (Vernon 2002). The forfeiture of corporate privileges is effected by the comptroller without a judicial proceeding. *See* TEX. TAX CODE ANN. § 171.257.

 If a corporation's corporate privileges are forfeited, the corporation shall be denied the right to sue or defend in a Texas court, and each director or officer of the corporation is liable for a debt of the corporation. *See* TEX. TAX CODE ANN. § 171.252. If a corporation's corporate privileges are forfeited, each director or officer is liable for each debt of the corporation that is created or incurred in Texas after the date on which the report, tax, or penalty is due and before the corporate privileges are revived. *See* TEX. TAX CODE ANN. § 171.255(a); *see also PACCAR Fin. Corp. v. Potter*, 239 S.W.3d 879, 882 (Tex. App.-Dallas 2007, no pet. h.); *Williams v. Adams*, 74 S.W.3d 437, 441 (Tex.App.-Corpus Christi 2002, pet. denied). Section 171.255 is penal in nature. *See PACCAR*, 239 S.W.3d at 882; *Tri–State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 251 (Tex.App.-Houston [1st Dist.] 2005, no pet.); *Williams*, 74 S.W.3d at 440; *Davis v. State*, 846 S.W.2d 564, 570 (Tex.App.-Austin 1993, no writ). As a result, it should be strictly construed and must not be extended beyond the clear meaning of its language. *See PACCAR*, 239 S.W.3d at 882; *Tri–State*, 184 S.W.3d at 251; *Williams*, 74 S.W.3d at 440; *Davis*, 846 S.W.2d at 570.

 Under section 171.255, directors and officers may lose the protection from liability provided by the corpo-

rate form. *See Jonnet v. State*, 877 S.W.2d 520, 522–23 (Tex.App.-Austin 1994, writ denied). Upon forfeiture of corporate privileges, the liability of a director or officer is in the same manner and to the same extent as if the director or officer were a partner and the corporation was a partnership. *See* TEX. TAX CODE ANN. § 171.255(b). The officers and directors are not required to have personally participated in the transactions resulting in the corporate debt. *See First Nat'l Bank of Boston v. Silberstein*, 398 S.W.2d 914, 915–16 (Tex.1966) (discussing an earlier version of the statute). Rather, it is the director's or officer's consent to and approval of the corporate debts that leads to their personal liability. *See Silberstein*, 398 S.W.2d at 916. As a result, actual knowledge of a corporate debt is not required. *See Skrepnek v. Shearson Lehman Bros., Inc.*, 889 S.W.2d 578, 581 (Tex.App.-Houston [14th Dist.] 1994, no writ) (discussing *Silberstein*). Even if a corporation's corporate privileges are revived, the liability of a director or officer is not affected by the revival the corporate privileges or charter. *See id.* § 171.255(d). However, section 171.255 does not apply to involuntary debts like tort judgments. *See Williams*, 74 S.W.3d at 442–43.

■ The statute provides an exception to the liability of the director or officer for the debts of the corporation which has forfeited its corporate privileges. *See Williams*, 74 S.W.3d at 441; *Skrepnek*, 889 S.W.2d at 581 (section 171.255(c) is "safe harbor" provision). A director or officer is not liable for a corporate debt if he shows the debt was created or incurred: (1) over his objection; or (2) without his knowledge and his exercise of reasonable diligence to become acquainted with the affairs of the corporation would not have revealed the intention to create the debt. *See* TEX. TAX CODE ANN. § 171.255(c); *see also PAC-*

*CAR*, 239 S.W.3d at 882. The director or officer of the corporation seeking to escape personal liability has the burden to prove he objected to or did not consent to the debt. *See PACCAR*, 239 S.W.3d at 884; *Williams*, 74 S.W.3d at 442.

■ A "debt means any legally enforceable obligation measured in a certain amount of money which must be performed or paid within an ascertainable period of time or on demand." TEX. TAX CODE ANN. § 171.109(a)(3) (Vernon Supp. 2007). The statute applies only to debts of the corporation created or incurred in Texas after the date on which the report, tax, or penalty is due and before the corporate privileges are revived. *See* TEX. TAX CODE ANN. § 171.255(a); *see also Williams*, 74 S.W.3d at 441. As a result, directors and officers may also be personally liable for corporate debts incurred between the date the franchise tax, report, or penalty was due, but not filed or paid, and the date of actual forfeiture, as well as the period between the date of actual forfeiture and the date the corporate privileges are revived. *See Dae Won Choe v. Chancellor, Inc.*, 823 S.W.2d 740, 743 (Tex.App.-Dallas 1992, no writ).

■ The officers or directors are not necessary parties to a suit against the corporation for indebtedness because they are not personally liable for the damages assessed against the corporation based on a contract. *See Agua Dulce Supply Co. v. Chapman Milling Co.*, 37 S.W.2d 768, 768–70 (Tex.Civ.App.-Texarkana 1931, no writ) (discussing earlier version of statute and venue). Rather, if the directors and officers are personally liable, it is a statutory liability through the force of section 171.255, which provides that the directors and officers are liable for the corporation's debts if the corporate privileges are forfeited. *See Agua*, 37 S.W.2d at 768–70. Further, the statutory personal liability of

the directors and officers for a debt created or incurred by the corporation when its corporate privileges were forfeited, i.e., after the date on which the report, tax, or penalty was due and before the corporate privileges were revived, can be enforced without making the corporation a party to the lawsuit against the corporate directors and officers. *See Sheffield v. Nobles,* 378 S.W.2d 391, 392 (Tex.Civ.App.-Austin 1964, writ ref'd) (discussing earlier version of statute). Often, a plaintiff files suit against a director or officer, seeking to hold that director or officer personally liable for a corporate debt pursuant to section 171.255, after the entry of a judgment against the corporation. *See generally, Williams,* 74 S.W.3d at 439 (after entry of judgment, plaintiff sued corporate officers seeking to hold them personally liable).

A corporation's charter or certificate of authority can be forfeited if the corporate privileges of the corporation are forfeited and the corporation does not pay, within 120 days after the date the corporate privileges were forfeited, the amount necessary for the corporation to revive its corporate privileges. *See* TEX. TAX CODE ANN. § 171.301(1). After a corporation's corporate privileges have been forfeited for 120 days, the comptroller shall certify the name of the corporation to the attorney general and the secretary of state. *See* TEX. TAX CODE ANN. § 171.302. The secretary of state may forfeit the charter or certificate of authority of a corporation if the secretary receives the comptroller's certification, the corporation does not revive its corporate privileges within 120 days after the date they were forfeited, and the corporation does not have assets from which a judgment for any tax, penalty, or court costs may be satisfied. *See* TEX. TAX CODE ANN. § 171.309. The secretary of state's forfeiture of a corporation's charter or certificate of authority is effect-

ed without a judicial proceeding. *See* TEX. TAX CODE ANN. § 171.310.

## C. Application of the Law to the Facts

In issues one through three, Trammell argues Galaxy Ranch and Larsen are equitably estopped from refusing to arbitrate because: (1) the causes of action asserted against him by Galaxy Ranch and Larsen "arise from," "relate to," or "derive from" the contract containing the arbitration provision and arise from the same operative facts, i.e, the allegedly defective construction of the building, the sum due under the contract, or the filing of the mechanic's lien, which are dependent on the contract; (2) even though he is a nonsignatory to the contract, he can compel Larsen to arbitrate his counterclaims because Larsen, a signatory to the contract, has asserted the same causes of action and alleged the same operative facts against C & K Concrete, also a signatory; and (3) even though he is a nonsignatory to the contract, he can compel Galaxy Ranch, an assignee of the contract, to arbitrate its counterclaims because Galaxy Ranch has sued Trammell claiming the benefits of that contract.

Galaxy Ranch and Larsen respond that: (1) their claims against Trammell are not within the scope of the contract, but seek to hold him personally liable because C & K Concrete's corporate charter was forfeited; (2) the only cause of action directed at Trammell's activities is its declaratory judgment action, which seeks to invalidate any claim asserted against Galaxy Ranch's property, because Trammell actually filed the lien during the period of time that C & K Concrete's corporate charter was forfeited; (3) equitable estoppel cannot give Trammell, a nonsignatory, a greater right to arbitrate than C & K Concrete and Larsen, the signatories to the contract; (4) Trammell cannot claim his actions are interdependent with those of C & K Con-

crete for purposes of applying the arbitration provision to the claims against him and then, argue he is clearly separate and apart from C & K Concrete when arguing C & K Concrete's waiver of the right to arbitrate does not apply to him; and (5) Trammell, a nonsignatory, cannot compel Galaxy Ranch, a nonsignatory and assignee, to arbitrate and case law does not support that assertion.

There is no dispute that the signatories to the contract containing the arbitration provision are C & K Concrete and Larsen. Galaxy Ranch is an assignee and Trammell is a nonsignatory. The contract contains the following arbitration provision:

11.1 Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

■ First, in issue one, Trammel argues Galaxy Ranch and Larsen's claims against him arise from the contract containing the arbitration provision. In their first amended counterclaims, the only place Galaxy Ranch and Larsen refer to Trammell by name is in the portion of the pleading listing the parties. Galaxy Ranch and Larsen listed the parties as follows:

1. Counterclaim Plaintiff Galaxy Ranch School, LP [sic] is a limited partnership organized under the laws of the state [sic] of Texas.

2. Counterclaim Plaintiff Bradford Larsen ("Larsen") is an individual resident of the state [sic] of Texas.

3. Counterclaim Defendant C & K Concrete Construction, Inc. ("C & K") is a corporation organized and existing under the laws of the state [sic] of Texas. C & K forfeited its charter on October 28, 2005. C & K has already appeared in this lawsuit by filing its Original Petition and may be served pursuant to Tex.R. Civ. P. 21a.

4. Cecil Trammell ("Trammell") is a shareholder and officer of C & K [Concrete] and personally liable for its debts and tortious conduct due to the forfeiture of its charter.

Throughout the remainder of their first amended counterclaim, Galaxy Ranch and Larsen refer to the "counterclaim defendants" as to each cause of action. However, when they listed the parties, the only party referred to as a "counterclaim defendant" was C & K Concrete. Also, in the fact portion of their pleading, Galaxy Ranch and Larsen complain only of C & K Concrete's conduct. Based on the record before us, we conclude the only claim against Trammell in Galaxy Ranch and Larsen's first amended counterclaims is the statutory claim pursuant to section 171.255 of the Texas Tax Code.

Galaxy Ranch and Larsen's claim under section 171.255 of the Texas Tax Code does not seek to hold Trammell personally liable for any contract damages caused by C & K Concrete. Rather, Galaxy Ranch and Larsen alleged Trammell is personally liable for C & K Concrete's debts because he is statutorily liable under section 171.255. *See Agua*, 37 S.W.2d at 768–70. Any liability Trammell may have as an officer of C & K Concrete results from the forfeiture of C & K Concrete's corporate privileges, not the contract or the allegedly defective construction of the building, the sum due under the contract, or the mechanic and materialman's lien. *See Agua*, 37 S.W.2d at 768–70 (officers or directors not necessary parties to suit against corporation for indebtedness because they are not personally liable for damages assessed against corporation based on contract). Galaxy Ranch and Larsen's right to recov-

er C & K Concrete's corporate debts from Trammell does not depend on the contract agreement containing the arbitration provision. *See Meyer*, 211 S.W.3d at 307 (when party's right to recover and its damages depend on agreement containing arbitration provision, party is relying on agreement for its claims).

Galaxy Ranch and Larsen could litigate their contract and tort claims against C & K Concrete without naming Trammell as a party and, after the entry of any judgment against C & K Concrete, file suit against Trammell seeking to hold him personally liable for C & K Concrete's corporate debts pursuant to section 171.255. *See generally, Williams*, 74 S.W.3d at 439 (after entry of judgment, plaintiff sued corporate officers seeking to hold them personally liable). Trammell is not a necessary party to Galaxy Ranch and Larsen's counterclaims against C & K Concrete for breach of contract and breach of warranty because they do not seek to hold Trammell personally liable for any contract damages caused by C & K Concrete. *See Agua*, 37 S.W.2d at 768–70. Also, Galaxy Ranch and Larsen's claims against C & K Concrete for violations of the DTPA and negligence do not seek to hold Trammell personally liable based on the contract or the same operative facts because section 171.255 does not apply to involuntary debts like tort judgments. *See Williams*, 74 S.W.3d at 442–43. Further, Galaxy Ranch and Larsen can seek to enforce Trammell's statutory, personal liability under section 171.255 of the Texas Tax Code without naming C & K Concrete as a party to the lawsuit against Trammell. *See Sheffield*, 378 S.W.2d at 392. Even if C & K Concrete is determined not to be liable for contract damages in the lawsuit, Galaxy Ranch and Larsen could still seek to hold Trammell personally liable for C & K Concrete's corporate debts, if any, under section 171.255 of the Texas Tax Code.

We conclude Galaxy Ranch and Larsen's claim against Trammell pursuant to section 171.255 of the Texas Tax Code seeking to hold him personally liable for C & K Concrete's corporate debts is not a claim that arises from the contract. Issue one is decided against Trammell.

■ Second, in issues two and three, Trammell argues that, even though he is not a signatory to the contract, he can compel Larsen and Galaxy Ranch to arbitrate their claims because Larsen, a signatory, has asserted the same causes of action and alleged the same operative facts against C & K Concrete, also a signatory, and Galaxy Ranch, an assignee, has sued Trammell claiming the benefits of that contract. This case contains an unusual twist in the facts. The signatories are not arbitrating their claims. C & K Concrete filed the initial lawsuit against Galaxy Ranch and Larsen. After it filed its motion to compel arbitration, Galaxy Ranch and Larsen filed their counterclaims against C & K Concrete. Then, the trial court denied the motion to compel arbitration. C & K Concrete has not filed a petition for a writ of mandamus or an interlocutory appeal relating to the trial court's order denying its motion to compel arbitration. Trammell, a nonsignatory to the contract, seeks to require Galaxy Ranch and Larsen to arbitrate their claim asserted against Trammell pursuant to section 171.255 of the Tax Code, even though Larsen and C & K Concrete, the signatories to the contract, are not arbitrating their disputes and Galaxy Ranch is an assignee. Trammell, a nonsignatory, cannot use the principle of equitable estoppel to obtain a greater right to arbitration than the signatories, C & K Concrete and Larsen. *See Meyer*, 211 S.W.3d at 306.

Moreover, there is no reason to apply the doctrine of equitable estoppel here.

As noted in *Grigson:* "The linchpin for equitable estoppel is equity-fairness." *Grigson,* 210 F.3d at 528. In that case, a party to a contract containing an arbitration clause sought to compel arbitration of its breach of contract claim against the other contracting party, as well as a tortious interference claim against a non-contracting party. The Court of Appeals for the Fifth Circuit affirmed an order compelling such arbitration, applying the doctrine of equitable estoppel to avoid an inequitable result:

> [I]t would be especially inequitable where, as here, a signatory non-defendant is charged with interdependent and concerted misconduct with a non-signatory defendant. In such instances, that signatory, in essence, becomes a party, with resulting loss ... of time and money because of its required participation in the proceeding. Concomitantly, detrimental reliance by that signatory cannot be denied: it and the signatory-plaintiff had agreed to arbitration in lieu of litigation (generally far more costly in terms of time and expense); but, the plaintiff is seeking to avoid that agreement by bringing the action against a non-signatory charged with acting in concert with that non-defendant signatory. *Of course, detrimental reliance is one of the elements for the usual application of equitable estoppel.*

*Id.* (citations omitted) (emphasis added). Thus, the inequitable result sought to be avoided by *Grigson* was the time and expense of litigation that a party to the arbitration clause, even though not sued, would nevertheless incur as a result of the litigation between another party to the arbitration clause and a non-signatory litigant.

Under the facts before us, however, there is no unfairness to Trammell that would result from requiring him to litigate the claims brought against him. Unlike the party seeking arbitration in *Grigson,* Trammell is not a party to the arbitration agreement. Nothing in the record demonstrates he signed in an individual capacity or otherwise relied on the arbitration clause. In short, there is no inequity that would rise to the need to employ equitable estoppel. Any issues respecting unfairness to C & K Concrete, which is a party to the arbitration clause, is abrogated by the fact that C & K Concrete did not seek relief from the trial court's earlier order denying its motion to compel arbitration. C & K Concrete is not a party to this combined interlocutory appeal and mandamus proceeding.

For the reasons set forth above, we conclude equitable estoppel does not require Larsen and Galaxy Ranch to arbitrate their claim against Trammell. Issues two and three are decided against Trammell. Based on our resolution of issues one through three, we need not address Trammell's remaining issues in the interlocutory appeal. Accordingly, we turn to Trammell's petition for a writ of mandamus.

## III. ORIGINAL PROCEEDING ON ORDER DENYING ARBITRATION

In his petition for a writ of mandamus, Trammell raises seven issues, arguing the trial court abused its discretion and he has no adequate remedy by appeal because: (1) he proved he was entitled to arbitrate; (2) although he is a nonsignatory, he is entitled to enforce the arbitration agreement with a signatory to the contract; (3) Galaxy Ranch, an assignee, is bound by the arbitration agreement; (4) Galaxy Ranch and Larsen failed to prove any defenses to the arbitration agreement; (5) C & K Concrete's forfeiture of its charter is irrelevant to the proceeding; (6) he did

not waive his right to arbitrate; and (7) the arbitrator should determine waiver and any other defenses.

 We have already determined in the interlocutory appeal that, under the TAA, the trial court did not err when it denied Trammell's motion to compel arbitration. However, the Federal Arbitration Act (FAA) preempts the TAA when state law refuses to enforce an arbitration agreement that the FAA would enforce, either because: (1) the TAA has expressly exempted the agreement from coverage; or (2) the TAA has imposed an enforceability requirement not found in the FAA. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex.2006) (orig.proceeding). Therefore, if the TAA is not preempted by the FAA, we have jurisdiction to consider both the interlocutory appeal under the TAA and the mandamus proceeding under the FAA. *Id.*

 Similar to the TAA, a party seeking to compel arbitration under the FAA must establish that: (1) there is a valid arbitration agreement; and (2) the claims raised fall within that agreement's scope. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex.2005) (orig.proceeding). Because we have already determined Galaxy Ranch and Larsen's claim against Trammell under section 171.255 of the Texas Tax Code does not fall within the scope of the contract, we conclude Trammell has failed to show the trial court clearly abused its discretion when it denied his motion to compel arbitration. *See* Tex. R.App. P. 52.8(a). Trammell's petition for a writ of mandamus is denied.

## IV. CONCLUSION

The trial court did not err when it denied Trammell's motion to compel arbitration.

The trial court's order denying Trammell's motion to compel arbitration is affirmed. Also, Trammell's petition for a writ of mandamus is denied.

This Court's April 10, 2007 order granting Trammell's emergency motion to stay the trial court's proceedings is vacated.