TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00559-CV






Matl Construction Company f/k/a Stewart-Matl, Ltd.; 

and Travelers Casualty and Surety Company of America, Appellants


v.


Jim Connelly Masonry, Inc., Appellee






FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT

NO. 26,611, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING





D I S S E N T I N G O P I N I O N


 

 The dispositive issue in this appeal turns on a fact question--whether Matl and JCM
formed the subcontract that included an agreement to arbitrate (the "Subcontract"). (1) After
conducting an evidentiary hearing, the district court denied appellants' motion to compel arbitration,
impliedly finding that the parties did not. See BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d
789, 795 (Tex. 2002) (when trial court does not make findings of fact or conclusions of law, "all
facts necessary to support the judgment and supported by the evidence are implied"); Worford
v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990) ("The judgment must be affirmed if it can be upheld
on any legal theory that finds support in the evidence."). That the parties' conduct evidenced an
agreement between the parties for JCM to perform masonry work as a subcontractor on the project
is distinct from the dispositive question of fact that the district court impliedly resolved--whether
Matl and JCM formed the Subcontract as the agreement controlling their relationship. See T.O.
Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 221-22 (Tex. 1992); Ishin Speed Sport, Inc.
v. Rutherford, 933 S.W.2d 343, 348 (Tex. App.--Fort Worth 1996, no writ) (whether conduct
exhibits acceptance is question of fact).

 Without citing authority, the majority sidesteps our standard of review of implied
findings and concludes "as a matter of law" that a valid arbitration agreement exists. Because the
majority fails to correctly apply the no-evidence standard of review to the district court's implied
finding, I respectfully dissent. (2) See Trammell v. Galaxy Ranch Sch., L.P. (In re Trammell),
246 S.W.3d 815, 820 (Tex. App.--Dallas 2008, no pet.) (in an interlocutory appeal from an order
denying arbitration under the Texas Arbitration Act (TAA), an appellate court applies a no-evidence
standard to the trial court's factual determinations and a de novo standard to legal determinations);
Dewey v. Wegner, 138 S.W.3d 591, 597 (Tex. App.--Houston [14th Dist.] 2004, no pet.) (same);
but see Associated Glass, Ltd. v. Eye Ten Oaks Invs., Ltd., 147 S.W.3d 507, 512 (Tex.
App.--San Antonio 2004, orig. proceeding) (applying abuse of discretion standard to trial court's
determination regarding the existence of an arbitration agreement under the TAA); see also City of
Keller v. Wilson, 168 S.W.3d 802, 810, 827 (Tex. 2005) (no-evidence standard of review). (3)
 
Crediting the evidence before the district court favorable to the finding, I would conclude that the
evidence supports the implied finding. See Trammell, 246 S.W.3d at 820; see also Worford,
801 S.W.2d at 109 (in determining whether some evidence supports implied finding, "it is proper
to consider only the evidence most favorable to the issue and to disregard entirely that which is
opposed to it or contradictory in its nature") (citation omitted). 

 I begin by reviewing the applicable principles of law. Courts generally apply ordinary
state-law principles that govern the formation of contracts when deciding whether parties agreed to
arbitrate. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227-28 (Tex. 2003); see American Med.
Techs., Inc. v. Miller, 149 S.W.3d 265, 273 (Tex. App.--Houston [14th Dist.] 2004, consolidated
appeal and orig. proceeding) ("[W]hen the very existence of an agreement is disputed, a court, not
an arbitrator, must decide at the outset whether an agreement was reached, applying state law
principles of contract."); see also Tex. Civ. Prac. & Rem. Code Ann. § 171.021 (West 2005) (if party
opposing an application to compel arbitration "denies the existence of the agreement, the court shall
summarily determine that issue").

 Under Texas contract law, parties form a binding contract when the following are
present: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting
of the minds; (4) each party's consent to the terms; and (5) execution of the contract with the intent
that it be mutual and binding. KW Constr. v. Stephens & Sons Concrete Contrs. Inc., 165 S.W.3d
874, 883 (Tex. App.--Texarkana 2005, pet. denied); Buxani v. Nussbaum, 940 S.W.2d 350, 352
(Tex. App.--San Antonio 1997, no writ). The material terms of the contract must be agreed upon
before a contract is binding on the parties. See T.O. Stanley Boot Co., 847 S.W.2d at 221; see also
Baylor Univ. v. Sonnichsen, 221 S.W.3d 632, 635 (Tex. 2007) ("Evidence of mutual assent in written
contracts generally consists of signatures of the parties and delivery with the intent to bind."). 
Whether or not the parties formed a contract is a fact question. See T.O. Stanley Boot Co.,
847 S.W.2d at 221-22 (applying no-evidence standard of review to determination of whether parties
had contract and concluding that "alleged contract failed for indefiniteness"); Harris v. Balderas,
27 S.W.3d 71, 77-79 (Tex. App.--San Antonio 2000, pet. denied) (issue whether evidence raised
a fact issue regarding the existence of an oral settlement agreement and concluding that
"summary judgment evidence raises a fact issue regarding whether the parties had a meeting of the
minds on the claims to be settled").

 Because appellants sought to compel arbitration, it was their burden to prove the
parties' formation of the Subcontract. See In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573
(Tex. 1999) ("A party seeking to compel arbitration must establish the existence of an arbitration
agreement, and show that the claims raised fall within the scope of that agreement."); Miller,
149 S.W.3d at 270 (burden to show existence of valid arbitration agreement on party seeking to
compel arbitration); In re Koch Indus., Inc., 49 S.W.3d 439, 444 (Tex. App.--San Antonio 2001,
orig. proceeding) ("The party seeking arbitration has the initial burden to present evidence of an
arbitration agreement."). (4) Further, when a court is called upon to determine whether the parties have
agreed to arbitrate, a court does not resolve doubts or indulge a presumption in favor of arbitration. 
See In re Big 8 Food Stores, Ltd., 166 S.W.3d 869, 876 (Tex. App.--El Paso 2005, orig.
proceeding); In re Rolland, 96 S.W.3d 339, 345 (Tex. App.--Austin 2001, orig. proceeding) ("[N]o
presumption of arbitrability arises unless the trial court finds an enforceable arbitration agreement.");
In re Jebbia, 26 S.W.3d 753, 757 (Tex. App.--Houston [14th Dist.] 2000, orig. proceeding). With
these principles of law in mind, I turn to a review of the evidence before the district court at the
hearing on appellants' motion to compel arbitration. 

 James Connelly, the president of JCM, and Daniel Matl, who was Matl's project
manager, both testified at the evidentiary hearing on the motion to compel arbitration. Mr. Connelly
testified that (i) the Subcontract was "unacceptable," he signed the Subcontract with the notation
"w/attachment," and returned the Subcontract to Matl with the referenced attachment (the "JCM
attachment"); (ii) he assumed that JCM had a written subcontract with Matl that included the JCM
attachment when JCM proceeded with the masonry work on the project and submitted paperwork 
for payment, and (iii) Matl did not communicate that the JCM attachment was not acceptable. (5) Mr.
Connelly further testified that JCM's acceptance of the Subcontract was conditioned on Matl's
acceptance of the terms in the JCM attachment:


 Q. When you sent the subcontract back to [Matl] did you also send the [JCM
attachment]?

 

 A. Yes.

 

 Q. Was your willingness to sign [the Subcontract] conditioned upon the
acceptance of the terms in [the JCM attachment]?


 A. Yes.


 Q. If those were not acceptable to [Matl] would you have accepted the form of
the subcontract without them?


 A. No. The form of the contract is unacceptable without the attachment.


Mr. Connelly testified that the terms and provisions contained in the Subcontract were unacceptable
because there were terms in the Subcontract "that seemed to favor the general contractor in a way
that were unacceptable." 

 Mr. Connelly also testified that there was no "meeting of the minds" between Matl
and JCM as to the terms of the Subcontract:


 Q. . . . Based upon the position that has been taken by [Matl] in that the [JCM
attachment] was not a part of the written subcontract, is it your position or the
position of [JCM] that there was not a meeting of the minds in regard to the
terms of the subcontract?

 

 A. There was no meeting of the minds without the attachment. The contract was
only acceptable if it included the attachment. (6) 



 Mr. Matl testified that he received the signed Subcontract from JCM with the notation
on the signature line "with attachment" and the JCM attachment, that he "had no authorization to
sign" the Subcontract with changes, and that he did not communicate to JCM that Matl did not
accept the JCM attachment before he signed the Subcontract on behalf of Matl. Mr. Matl also
testified concerning his authority to agree to modifications to the Subcontract and terms in the JCM
attachment that would have modified the Subcontract, including the notice provision and the right
to the possession of JCM's equipment in the event of defective work:


 Q. In any event, when you received [the JCM attachment] you understood that
these were revisions that Mr. Connelly wanted to make to the subcontract?

 

 A. Yes, sir.

 

 Q. And the items on here change are what you believe to be material provisions
in your subcontract that you weren't--excuse me--that you weren't willing
to change; is that correct, sir?

 

 A. I'm not so certain that there's anything necessarily in here that we're
unwilling to agree to. It was just not--not an attachment or a part of our
subcontract sent to him and I had no authorization to sign something that was
returned contrary to the text in the transmittal telling him do not make
changes to the contract.

 

 Q. Looking at [the JCM attachment], Mr. Matl, there's some requirement in
there concerning the period of time within which notice is to be given of any
defective or improper work; is that correct?

 

 A. Yes.

 

 Q. And you on behalf of [Matl] consider the notice provision in your subcontract
an important provision, do you not, sir?

 

 A. Yes, sir.


* * *


 Q. Mr. Matl, looking again at [the JCM attachment], one of the changes Mr.
Connelly was requesting on behalf of [JCM] was that they would be allowed
to take all their vehicles, equipment and supplies with them when they left the
project; is that correct?

 

 A. Yes sir.

 

 Q. And you consider that a material provision--or material change to your
subcontract because your subcontract contains a provision that allows you to
take over that equipment; is that correct?


 A. Yes sir.



 Consistent with Mr. Matl's testimony, the position of Matl and Travelers as stated
in their motion to compel arbitration was that Matl never agreed to the JCM attachment: "Matl
never agreed to or signed the attachment." In the motion, they argued:


 JCM maintains that its acceptance of the subcontract was conditioned upon the
inclusion of an attachment to the subcontract. Matl disagrees and contends that the
terms of the contract under which the parties performed at the Project are limited to
the subcontract agreement Matl originally forwarded to JCM. The subcontract
agreement specifically lists all the documents that comprise the subcontract. The
attachment JCM seeks to include is not listed. Rather than attempt to negotiate for
the inclusion of the attachment, JCM included a notation next to its signature that
indicated its desire to include the attachment. Matl maintains that the subcontract
consists of all the documents specifically listed in the document itself. 


 * * *


 Despite the fact that a written contract exists in this case, JCM has chosen not to sue
on that contract. Matl forwarded a subcontract agreement to JCM prior to the start
of JCM's work. JCM signed that contract. In its signature line, JCM included a
notation indicating that JCM was includ[ing] an attachment with its signed contract. 
Matl never agreed to or signed the attachment.



 Stepping into the shoes of a factfinder, the majority concludes that (i) "there is no
dispute that JCM and Matl did form a contract," (7) (ii) "the terms of that contract, based on the
undisputed evidence of the parties' conduct, necessarily includes the Subcontract," and (iii) "the
parties' conduct objectively manifested mutual assent to the subject matter and essential terms of the
Subcontract--JCM would provide masonry materials and labor on the project, strictly comply with
the project's 'Terms and Conditions,' in exchange for payment from Matl" because "JCM repeatedly
invoked rights under the Subcontract." (8) The majority concludes that "even if JCM's response to the
Subcontract was a 'counter-offer' that was accepted through Matl's performance,[ ] the parties would
have formed a contract that included the same arbitration provision contained in Matl's
original offer." 

 In reaching its conclusions, the majority ignores its role as a reviewing court and
disregards evidence favorable to the district court's implied finding. See Worford, 801 S.W.2d at
109; Trammel, 246 S.W.3d at 820. (9) The majority disregards (i) the testimony at the evidentiary
hearing that the parties did not agree to essential terms and conditions of the Subcontract, (ii) Mr.
Connelly's testimony that the Subcontract without the attachment was unacceptable because it
contained terms "that seemed to favor the general contractor in a way that were unacceptable," and
(iii) Matl's conduct inconsistent with its assent to the terms of the JCM attachment, including its
refusal to provide the required notice to JCM to replace or repair defective work and its refusal to
allow JCM to take its vehicles, equipment, and supplies when JCM left the project. Crediting this
evidence, the trial court could have found that JCM rejected the Subcontract and made a counteroffer
that Matl did not accept. See Worford, 801 S.W.2d at 109; Trammel, 246 S.W.3d at 820.

 Based on the parties' pleaded positions and the evidence before the district court that
Matl and JCM did not reach a "meeting of the minds" as to material terms of the Subcontract, I
would conclude there is some evidence to support the implied finding that Matl and JCM did not
form the Subcontract as the agreement that controlled their relationship. See T.O. Stanley Boot Co.,
847 S.W.2d at 221 (parties must agree to material terms to form binding contract); Worford,
801 S.W.2d at 109; Trammel, 246 S.W.3d at 820. Because there is some evidence to support the
implied finding, I would affirm the district court's order denying appellants' motion to compel
arbitration. I, therefore, respectfully dissent. 


 __________________________________________


 Jan P. Patterson, Justice


Before Justices Patterson, Pemberton and Waldrop 


Filed: July 31, 2009



1. I refer to appellant Matl Construction Company f/k/a Stewart-Matl, Ltd. as "Matl";
appellant Travelers Casualty and Surety Company of America as "Travelers"; and appellee
Jim Connelly Masonry, Inc., as "JCM."
2. In contrast with our standard of review of an implied finding of fact from an order denying
arbitration, the interpretation of unambiguous agreements and the determination of an arbitration
agreement's validity are legal questions that we decide as a matter of law. See In re D. Wilson
Construction Company, 196 S.W.3d 774, 781 (Tex. 2006) (whether written contracts between the
parties contained arbitration provisions and, if so, whether the provisions were ambiguous were
questions of law); J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227-28, 230 (Tex. 2003) (court
interpreted agreement to determine whether reciprocal promises to arbitrate were sufficient
consideration to support enforcing arbitration agreement; court found clause in agreement ambiguous
and remanded to trial court to determine "what the parties intended").
3. An appellate court will sustain a no-evidence point of error when: (1) the record discloses
a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence
from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to
prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the
opposite of the vital fact. See City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005); see also
Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001) (party with burden of proof attempting
to overcome adverse finding of fact must establish issue as a matter of law; point of error should be
sustained only if the contrary proposition is conclusively established).

4. Appellants contend that the burden of proof was on JCM to prove the non-existence of an
agreement, citing Hearthshire Braeswood v. Bill Kelly Co., 849 S.W.2d 380, 386
(Tex. App.--Houston [14th Dist.] 1993, writ denied). But our sister court in that case was
addressing the burden of proof as to defensive issues such as fraud or unconscionability to the
enforcement of an arbitration agreement. See id. Once the party seeking to compel arbitration has
satisfied its burden to prove that an agreement exists, the burden shifts to the party seeking to avoid
arbitration to prove a defense such as fraud. See In re Koch Indus., Inc., 49 S.W.3d 439, 444
(Tex. App.--San Antonio 2001, orig. proceeding).
5. Prior to JCM's discovery that Matl did not accept the JCM attachment, counsel for JCM
sent letters to Matl, Travelers, and Bastrop County seeking alleged amounts due to JCM for work
performed, stating in the letters that JCM had a written contract with Matl and attaching portions of
the Subcontract to the letters. Mr. Connelly also executed sworn statements of account that reference
the Subcontract.
6. JCM also filed an affidavit from Mr. Connelly with its response to the motion to compel. 
Mr. Connelly averred similarly to his testimony at the hearing:


 Because Matl is taking the position that it did not accept the JCM attachment, JCM
and Matl did not agree upon material terms in the Proposed Subcontract. Since Matl
did not accept the terms of the JCM attachment, the terms of the Proposed
Subcontract without the terms of the JCM attachment, were not and are not
acceptable to JCM. Because JCM and Matl did not agree upon material terms of the
Proposed Subcontract, it is JCM's position that the Proposed Subcontract does not
constitute a written contract between JCM and Matl and that a written contract
between JCM and Matl that contains a binding arbitration agreement does not exist.
7. The majority states that JCM's position before the district court was "that no contract had
ever been formed" and concludes that "[a]s the parties' positions have been refined through appellate
briefing and argument, . . . there is no dispute that JCM and Matl did form a contract that governed
their respective rights regarding JCM's work on the project." The majority mischaracterizes JCM's
position. JCM pleaded that, based on Matl's position that the JCM attachment was not part of the
Subcontract, there was no "agreed upon, written subcontract pertaining to the Project" between the
parties and that the relationship between the parties was controlled by no contract or an oral contract. 
JCM's claims included suit on the bond, quantum meruit, breach of oral contract, conversion, and
equitable relief to recover its equipment.
8. Appellants did not plead waiver or estoppel, but answered by general denial. See Tex. R.
Civ. P. 94 (affirmative defenses of waiver and estoppel must be pleaded). The majority's reliance
on JCM's conduct "invok[ing] rights under the Subcontract" tracks the appellants' argument of
waiver and estoppel that appellants raise for the first time in their reply brief. To the extent
appellants raise new issues in their reply brief, however, they have not preserved these issues for this
Court's review. See Tex. R. App. P. 38.1, 38.3; Dallas Co. v. Gonzales, 183 S.W.3d 94, 104
(Tex. App.--Dallas 2006, pet. denied) (rules of appellate procedure do not allow an appellant to
raise new issue in reply brief); Howell v. Texas Workers' Comp. Comm'n, 143 S.W.3d 416, 439
(Tex. App.--Austin 2004, pet. denied) (same). In their reply brief, appellants contend that JCM has
"waived any right it had to say the Subcontract was unacceptable without the attachment" because
JCM began work on the project without inquiring with Matl about the existence of a signed
attachment and that "JCM's actions conform, without exception, to the direct benefits theory of
estoppel." See In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 739 (Tex. 2005) (discussing the
direct benefits theory). 

 

 The two cases cited by the majority to support its conclusions from the parties' conduct are
inapposite. See Fiess v. State Farm Lloyds, 202 S.W.3d 744, 746 (Tex. 2006); Texas Disposal Sys.
Landfill, Inc. v. Waste Mgt. Holdings, Inc., 219 S.W.3d 563, 589 (Tex. App.--Austin 2007,
pet. denied). In Fiess, the issue was limited to the construction of an insurance policy provision. 
202 S.W.3d at 746. In that context, the Texas Supreme Court stated that in construing contract
provisions, the "parties' intent is governed by what they said, not by what they intended to say but
did not." Id. In Texas Disposal, the appeal was from a summary judgment ruling that dismissed the
appellants' claim of tortious interference with an existing contract. 219 S.W.3d at 590. This Court
upheld the summary judgment, concluding that there was no evidence that a contract existed to
support the tortious interference claim. Id. 
9. The majority finds significant that the JCM Attachment "did not seek to modify the
Subcontract's arbitration provision." The applicable clause in the Subcontract provided that, if
efforts to resolve disputes through negotiation failed, Matl could elect to have the dispute mediated
under the Commercial Mediation Rules of the American Arbitration Association and, in the event
the mediation was unsuccessful, Matl then had the right to demand arbitration. In contrast, the JCM
attachment included a promise by Matl to "[g]o to a mutually agreed-upon professional mediator in
a county in which the job is located with us if unresolvable disputes should occur." The inconsistent
alternative dispute resolution clauses are further support for the implied finding that Matl and JCM
did not form the Subcontract as the agreement that controlled their relationship.