June WILLIAMS and Robert
E. Williams, Appellants,

v.

Helen ADAMS, Independent Executrix
of the Estate of Janie Hughston,
Appellee.

No. 13–00–279–CV.

Court of Appeals of Texas,
Corpus Christi.

March 7, 2002.

Rehearing Overruled May 16, 2002.

**438**

James K. Peden, III, P. Michael Jung, Strasburger & Price, Robert D. Wootton, Robert D. Cohen, Cohen & Zwerner, Dallas, for appellants.

Edward A. Stapleton, III, Brownsville, Roger W. Hughes, Adams & Graham, Harlingen, for appellee.

Before Chief Justice VALDEZ and Justices DORSEY and RODRIGUEZ.

## OPINION

J. BONNER DORSEY, Justice.

The issue in this case is whether June and Robert E. Williams were properly held personally liable for a $987,396.90 judgment taken against Williams Construction Corporation in 1989. We hold that they may not be held liable under these circumstances, reverse the case, and render judgment that plaintiff take nothing.

The judgment at issue is one for personal injuries based on negligence. Janie Hughston was injured on November 22, 1986 at the Suntide III Condominiums in South Padre Island, Texas. She filed suit on December 7, 1987 to recover damages for her injuries. On May 30, 1989, a judgment favorable to her was entered in that suit against Williams Construction Co. and First Financial Development Corporation. Williams Construction Co., a Texas Corporation, was the company that built the condominiums and June and Robert E. Williams were both officers of the company when the judgment was taken. However, the corporation's charter was forfeited on January 9, 1989, before the judgment

was taken, for failure to pay franchise taxes.

After entry of the judgment, the plaintiff brought another suit seeking to hold Robert and June Williams personally liable for the judgment, because of their status as corporate officers pursuant to Texas Tax Code section 171.255. *See* Tex. Tax Code Ann. § 171.255 (Vernon 1992). The trial court held that all conditions of section 171.255 were met, and entered judgment holding them each personally liable on the judgment. From that judgment the Williams appeal. The Williams raise three issues on appeal, but we only address their first one. They argue that the trial court erred in imposing personal liability upon them under section 171.255 because (1) the statute does not apply to the debts arising out of unintentional torts such as this one and, (2) if indeed it does so apply, it does not impose liability here because the "debt" was not incurred "after the date on which the report, tax, or penalty is due."

 This is an issue of first impression in Texas that presents a question of statutory interpretation. Matters of statutory construction are questions of law for the courts to decide. *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex. 1989). As such, they are subject to de novo review. *State Dept. of Hwys. & Pub. Transp. v. Payne,* 838 S.W.2d 235, 238–39 (Tex.1992). "In interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy." Tex. Gov't. Code Ann. § 312.005 (Vernon 1998). We may consider, among other matters, the: (1) object sought to be attained; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; (5) consequences of a particular construction; (6) administrative

construction of the statute; and (7) the title (caption), preamble, and emergency provision of the statute. *Id.* § 311.023. Our starting point is to look to the plain and common meaning of the statute's words, viewing its terms in context and giving them full effect. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 484 (Tex.1998). We are mindful that "every word in a statute is presumed to have been used for a purpose; and a cardinal rule of statutory construction is that each sentence, clause and word is to be given effect if reasonable and possible." *Perkins v. State,* 367 S.W.2d 140, 146 (Tex.1963). The statute should be considered in its entirety when determining the meaning of its component parts. *See Bridgestone/Firestone, Inc. v. Glyn–Jones,* 878 S.W.2d 132, 133 (Tex.1994). We also should presume the Legislature intended a "result feasible of execution" when it enacted the statute. *In re Missouri Pacific R. Co.,* 998 S.W.2d 212, 216 (Tex.1999). With these principles in mind, we turn to the statutory language to be construed.

The Williams were held personally liable for the judgment pursuant to Texas Tax Code section 171.255, which states:

(a) If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived. . . .

(b) The liability of a director or officer is in the same manner and to the same extent as if the director or officer were a partner and the corporation were a partnership.

(c) A director or officer is not liable for a debt of the corporation if the director

or officer shows that the debt was created or incurred:

> (1) over the director's objection; or
>
> (2) without the director's knowledge and that the exercise of reasonable diligence to become acquainted with the affairs of the corporation would not have revealed the intention to create the debt.

TEX. TAX CODE ANN. § 171.255 (Vernon 1992). "Debt" is defined to mean "any legally enforceable obligation in a certain amount of money which may be performed or paid within an ascertainable period of time or on demand." TEX. TAX CODE ANN. § 171.109(a)(3) (Vernon 1992).

### A. PURPOSE AND CONSTRUCTION OF THE STATUTE

■ We begin with the overall purpose of the statute. The Texas Supreme Court has stated that "the statute was meant to prevent wrongful acts of culpable officers of a corporation, and was for the protection of the public and particularly those dealing with the corporation." *Schwab v. Schlumberger Well Surveying Corp.*, 145 Tex. 379, 198 S.W.2d 79, 81 (1946) (referring to a predecessor statute [1]). It has been described as a "Draconian provision designed to encourage payment of the corporate franchise tax." ROBERT W. HAMILTON, 19 TEX. PRACTICE: BUSINESS ORGANIZATIONS § 235, at 238 (1973) (also referring to a predecessor statute). The "evil" that the statute attempts to redress is a corporation's failure to pay franchise taxes. *See* TEX. TAX CODE ANN. (Vernon 1992 & Supp. 2001). In that regard, it is a revenue measure. *See G. Richard Goins Const. Co., Inc. v. S.B. McLaughlin Associates, Inc.*, 930 S.W.2d 124, 128 (Tex.App.—Tyler 1996, writ denied).

■ The second principle we apply in construing section 171.255 is the rule of strict construction. Section 171.255 is penal in nature, and as such, it should be strictly construed and must not be extended beyond the clear meaning of its language. *See Schwab v. Schlumberger*, 198 S.W.2d at 81; *Davis v. State*, 846 S.W.2d 564, 570 (Tex.App.—Austin 1993, no writ); *but see Cain v. State*, 882 S.W.2d 515, 518–19 (Tex.App.—Austin 1994, no writ) (arguing that the rule of strict construction has been improperly applied in previous section 171.255 cases). " 'Strict construction of a statute' is that which refuses to expand the law by implications or equitable considerations, but confines its operation to cases which are clearly within the letter of the statute as well as within its spirit or reason, resolving all reasonable doubts against applicability of statute to particular case." Morell E. Mullins, Sr., *Coming to Terms with Strict and Liberal Construction*, 64 ALB. L. REV. 9, 20 (2000). When interpreting section 171.255, the doctrine of strict construction requires that we construe the statute in a way that favors the officers and directors. *Schwab*, 198 S.W.2d at 81; *Rogers v. Adler*, 696 S.W.2d 674, 677 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); 6 S.W.2d at 677; *see, e.g., Davis*, 846 S.W.2d at 570–71 (strictly construing the statute to hold that a corporate officer may only be held liable for a corporation's unpaid franchise taxes and penalties only if they became due and payable after the corporate privileges were forfeited); *Curry Auto Leasing, Inc. v. Byrd*, 683 S.W.2d 109, 112 (Tex.App.—Dallas 1984, no writ) (strictly construing state to hold that debt created by default of lease agreement was "created or incurred" on date lease agree-

---

**1.** The amendments to this statute do not affect the relevance of previous rulings to the analysis in this case. Thus, we cite to cases decided under the predecessors to section 171.255 as authority.

ment was entered into and not on date of default).

## B. STATUTORY LANGUAGE

Section 171.255 makes the directors and officers liable for the debts of a corporation whose corporate privileges have been forfeited for failing to pay its franchise taxes. TEX. TAX CODE ANN. § 171.255(a) (Vernon 1992). The statute only applies to debts of the corporation "created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived." *Id.* However, the language of its exception to liability indicates that section 171.255 was not intended to apply to judgment debts predicated on negligence liability. The question of what qualifies as a "debt" under section 171.255(a) must be read in light of 171.255(c). That section provides:

A director or officer is not liable for a debt of the corporation if the director or officer shows that the debt was created or incurred:

(1) over the director's objection; or

(2) without the director's knowledge and that the exercise of reasonable diligence to become acquainted with the affairs of the corporation would not have revealed the intention to create the debt.

TEX. TAX CODE ANN. § 171.255(c) (Vernon 1992).

A fundamental question is whether the statute was intended to impose individual liability on the officers and directors for conduct that is merely negligent, as opposed to intentional conduct. In addressing that question, we are required to divine the intention of the legislature using the customary tools of statutory construction. The statute provides an exception to the liability of the officer or director for debts of the corporation in section 171.255(c) to the effect that one will not be liable for those debts that are incurred without the officer's or directors knowledge or consent. This provision must be read together with the statutory definition of debt in order for the statute to be applied correctly and only impose liability for the class of debts it was envisioned to reach.

 In construing a statute, we are to give effect to all its sections in order to view the statute as a congruent whole and internally consistent. The statute should be considered in its entirety when determining its meaning. *See Glyn–Jones,* 878 S.W.2d at 133. Each word should be given its common usual meaning when possible. *Garrison Contractors, Inc.,* 966 S.W.2d at 484. We believe that when the language of subsection (c) is read together with the other sections of the statute, it becomes clear that the statute does not apply to unintentional torts. This view was explained by Justice Jones of the Austin Court of Appeals, in a relatively recent dissenting opinion:

[The language of subsection (c)] makes perfect sense when applied to contractual debts undertaken by the corporation. In operation, it means that if a corporation contracts to pay a certain amount of money during the time that its corporate privileges are suspended, the officers and directors who either objected to or did not know about the incursion of the debt may not be held personally accountable to satisfy it. However, officers and directors who had knowledge of the incursion of a debt and failed to object to it may be personally liable for it. The language in subsection (c)(2) that qualifies the "knowledge" component means that a corporate officer or director cannot lay behind the log and be immune from personal accountability on the basis of ignorance if such ignorance is shown to be unreasonable. The

exception, in effect, holds the decision-makers liable for debts which they exercised, or at least had the ability to exercise, some control over incurring. . . .

Viewing the enactment from this perspective reveals that the legislature envisioned personal liability only for debts created or incurred through some sort of "affairs of the corporation" about which the director or officer in question had some knowledge and control. In referring to "the intention to create the debt," the legislature can only have been speaking of the *corporation's* intention. Thus, an interpretation allowing personal liability to be imposed for a debt "created" by a third party . . ., without any involvement or transaction of business by the corporation, is contrary to the clear intent of the legislature.

*See Jonnet v. State,* 877 S.W.2d 520, 530 (Tex.App.—Austin 1994, writ denied) (Jones, J., dissenting). As the Texas Supreme Court explained, in construing a predecessor statute:

[P]ersonal liability is determined by the acts of Respondents in consenting to and approving the debts of the corporation where knowledge of their creation is shown to have come to them in the regular course of the business of the corporation. This is neither imputed knowledge nor "vicarious" liability as Respondents suggest; it is liability which results from and is attributable to the acts of Respondents. They had only to disapprove and disavow the debts to avoid personal liability; but having consented to and approved the debts, they became personally liable therefore.

*First Nat'l Bank of Boston v. Silberstein,* 398 S.W.2d 914, 916 (Tex.1966) (decided under Tex.Rev.Civ. Stat. Ann. Tax.-Gen. arts. 12.14(3); 12.17(3), repealed, Acts 1981, 67th Leg., R.S., p. 1490, ch. 389 171.255).

Accordingly, we believe that the proper construction of section 171.255 is that it does not apply to tort judgments predicated on negligence liability. The language of the statute itself indicates that it was not intended to apply to those types of debts. Construing the statute strictly in a manner that limits its application against the person upon whom the penalty is sought to be imposed, we hold that section 171.255 cannot be used to impute personal liability to an officer or director of a corporation for a corporate debt when the "debt" at issue is a tort judgment based on negligence liability.

## C. LEGISLATIVE HISTORY

Analysis of the legislative history also leads us to the result we reach today. The version of this statute that existed prior to 1977 required that, in order to impose personal liability upon a corporate officer or director, the plaintiff must affirmatively show that the debt was created with the "knowledge, approval and consent" of the officer or director sought to be held liable. *See* Act. of Aug. 8, 19651, 57th Leg., 1st C.S., ch. 24, art. VII, § 9, 1961 Tex. Gen. Laws 71, 110–11; Act of May 24, 1969, 61st Leg. R.S., ch. 801, § 11, 1969 Tex. Gen. Laws 2366, 2372 (Tex. Tax.–Gen. Ann. art. 1214, since repealed and codified at Tax Code § 171.255). The 1977 amendments shifted the burden of proof from the plaintiff onto the corporate officer or director. Act of May 25, 1977, 65th Leg. R.S., ch. 671, § 1, 1977 (Tex. Gen. Laws 1692, 1692–93); *see also Jonnet,* 877 S.W.2d at 531 (Jones, J., dissenting). Bill analyses published by both a House Study Group and the House Ways and Means Committee indicate that the purpose of the amendment was to place the burden on the officers and directors who seek to escape personal liability. *See* House Study Group, Bill Analysis, Tex. H.B. 1860, 65th

Leg., R.S. (1977); House Ways and Means Comm., Bill Analysis, Tex. H.B. 1860, 65th Leg. R.S. (1977). Thus, if no substantive change other than the burden-shifting was intended by amending the statute, then the debts referred to in the liability-imposing provision of the amended statute still refer to same type of debts as before. That is, debts that *could have been created* with the officer or director's "knowledge, approval and consent." *See* Act. of Aug. 8, 19651, 57th Leg., 1st C.S., ch. 24, art. VII, § 9, 1961 Tex. Gen. Laws 71, 110–11; Act of May 24, 1969, 61st Leg. R.S., ch. 801, § 11, 1969 Tex. Gen. Laws 2366, 2372 (Tex. Tax.–Gen. Ann. art. 1214, since repealed and codified at Tax Code § 171.255). When applied to "involuntary debts" such as a tort judgment—especially one predicated on negligence liability—this provision makes no sense. Indeed, "[o]nly by limiting personal liability to debts created through an *actual transaction of business* could officers and directors have a fair and reasonable opportunity to protect themselves against personal liability by disapproving and disavowing such debts." *Jonnet*, 877 S.W.2d at 532 (Jones, J., dissenting). Thus, the legislative history of this statute indicates that it was not intended to apply to debts that were not "created or incurred" through some transaction of corporate business. Under that analysis, a tort judgment predicated on negligence liability would clearly fall beyond the ambit of the statute.

### D. Inapplicability of Administrative Penalty Cases

■ We find this case distinguishable from the line of cases involving debts arising out of a corporation's failure to plug abandoned wells. *See State v. Triax Oil and Gas, Inc.*, 966 S.W.2d 123, 126 (Tex. App.—Austin 1998, no writ); *Cain*, 882 S.W.2d at 516; *Jonnet*, 877 S.W.2d at 524. Those cases hold, generally, that the debt predicated on an administrative penalty assessed for failing to plug abandoned wells is created or incurred on the date that the administrative body assesses the penalty. *Triax*, 966 S.W.2d at 126; *Cain*, 882 S.W.2d at 516; *Jonnet*, 877 S.W.2d at 524. That reasoning is inapplicable to the instant case. The administrative penalty does not exist until it is assessed by the agency. As noted by the court in *Jonnet*, "the obligation to pay the statutory penalty only arises if and when a penalty is actually assessed." *Jonnet*, 877 S.W.2d at 523–24. Moreover, the corporation's failure to comply with the statutory requirements regarding plugging the wells was an ongoing state of affairs. Each day amounted to a new violation. *Id.* at 524. Also, in each case, the officers of the corporation had some knowledge that the corporation was out of compliance with the natural resources code. Even though the penalties that eventually resulted from the noncompliance were "involuntary," we see a distinction between the failure to comply with a statute and resultant fine that is imposed and the failure to adhere to the standards of ordinary prudence (as in a negligence cause of action), and the resultant tort judgment that is assessed. Keeping a corporation in compliance with the natural resources code is a part of the general transacting of corporate business done by the corporation. Also, different policy concerns are involved in determining whether to include an administrative penalty based on an environmental violation within the scope of a statute designed to provide heightened collection powers to creditors of the corporation. We find the oil well cases inapplicable to the instant case.[2]

---

**2.** Even if we were to hold that the statute imposes personal liability on the Williams, we

Therefore, in conclusion, we hold that because the language and the legislative history of the TEX. TAX CODE ANN. § 171.255 indicates that it was not intended to apply to judgments predicated on negligence tort liability, the trial court erred in holding the corporate officers personally liable on the debt. Our disposition of the appellant's first point of error renders moot the remaining points. We reverse the judgment of the trial court and render judgment that Adams take nothing from her suit.

would hold that the "debt" at issue in this case was "created or incurred" on the date of the event or events that gave rise to the debt. See Schwab, 198 S.W.2d at 81 (holding that "debt" is not created or incurred by renewal of previous note under predecessor statute); Skrepnek v. Shearson Lehman Bros., Inc., 889 S.W.2d 578, 582 (Tex.App.—Houston [14th Dist.] 1994, no writ) (holding that debt for fraud judgment taken against corporation was created or incurred at the time the fraud occurred); Wilburn v. State, 824 S.W.2d 755, 760–61 (Tex.App.–Austin 1992) (holding that debt for unpaid unemployment taxes was created or incurred at the time when the salaries were paid for which taxes would be owed); River Oaks Shopping Center v. Pagan, 712 S.W.2d 190, 193 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (holding that debt arising out of default on a lease agreement was created or incurred on date that lease agreement was entered into and not on date that default occurred); Rogers v. Adler, 696 S.W.2d at 676–77 (holding that debt resulting from a breach of contract was "created or incurred" at time contract was signed and not at time defaults occurred); Curry Auto Leasing, Inc. v. Byrd, 683 S.W.2d 109, 112 (Tex.App.—Dallas 1984, no writ) (holding that corporate debts arising from failure to adhere to a leasing contract were created or incurred at the time the rental agreement was entered into and not at the time the defaults occurred); McKinney v. Anderson, 734 S.W.2d 173, 174–75 (Tex.App.–Houston [1st Dist.] 1987), (holding that corporate debts arising from failure to adhere to an equipment leasing contract were created or incurred at the time the agreement was entered into and not at the time the defaults occurred); but see Cain, 882 S.W.2d at 519 (holding that "debt" predicated on liability for failure to plug abandoned wells did not occur when company originally failed to plug wells, but at the time the debt became liquidated); Davis, 846 S.W.2d 564 (holding that debt for franchise tax was created or incurred on date tax became due).

In the present case Williams Construction's tort liability "debt" for the purposes of the statute would have been created when Ms. Hughston was injured at the condominium unit. The undisputed evidence is that the corporate charter had not been revoked when the injury occurred, and there is no evidence of the status of franchise taxes at that time. Because appellee does not come within the requirements of Section 171.255, we would hold that she may not rely on the statute to impose personal liability of appellants.