

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00452-CV

CHERYL M. SURBER AND
JOHNSON PROPERTY
INVESTMENTS, INC.

APPELLANTS

V.

W. JORDAN WOY AND JAY F.
LOMBARDO

APPELLEES

----------

## FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

This is the third appeal in a suit arising from a transaction entered into by Appellant Johnson Property Investments, Inc. (JPI) and its owner, Appellant Cheryl Surber (collectively Surber), based on representations made by nonparty Dan Franklin. Having obtained a judgment against ProfitLive, Inc. (PLI) and

---

[1]See Tex. R. App. P. 47.4.

ProfitLive Partnership (PLP) on claims that were severed from this suit,[2] Surber amended her claims against Appellees W. Jordan Woy and Jay Lombardo to hold them personally liable for the judgment under a director liability provision of the Texas Tax Code.[3] In ten issues, Surber challenges the trial court's findings of fact and conclusions of law, its evidentiary rulings, and its denial of her motion for summary judgment. Because we hold that the evidence was sufficient to support the trial court's judgment, we affirm.

## Background

In July 1999, Woy, Lombardo, and Franklin incorporated PLI and filed articles of incorporation listing themselves as directors. At trial, Woy and Lombardo contended that they had stopped serving on the PLI board of directors in 1999, and Surber attempted to establish that they had never effectively resigned or been removed as directors. Woy and Lombardo testified that they decided to end their involvement with PLI within a few months of incorporation. The three shareholders met, orally voted to remove Woy and Lombardo as directors, and signed a settlement agreement divesting Woy and Lombardo of any interest in PLI. Surber contended, however, that any resignation was ineffective because it was not in writing and because the settlement agreement

---

[2]*See Profitlive P'ship v. Surber*, No. 02-09-00104-CV, 2010 WL 1999461 (Tex. App.—Fort Worth May 20, 2010, pet. denied) (mem. op.); *see also Profitlive P'ship v. Surber*, 248 S.W.3d 259 (Tex. App.—Fort Worth 2007, no pet.).

[3]Tex. Tax Code Ann. § 171.255 (West 2008).

could not constitute a resignation because it did not contain the word "resign" and was not addressed to the corporation. Surber also disputed their claim that when the company was formed, the three directors orally agreed each would have a one-third interest in the company.

PLI failed to pay its franchise tax and consequently lost corporate privileges on February 13, 2001. Franklin, along with other investors not involved in this case, formed PLP. Woy and Lombardo were not partners in PLP. The PLP partnership agreement provided that PLP would acquire 100% of the outstanding shares of PLI. In May 2001, JPI paid Franklin $100,000 for a ten percent interest in PLP. The check was made out to PLI.

Also in 2001, Franklin, Woy, and Lombardo became involved in Maximum Benefits Company (MBC), a multilevel marketing company selling long-distance services. Lombardo testified that he was introduced to the program by Woy and some of Woy's clients and that he then told Franklin, a client of Lombardo's, about it. Franklin invited Profit Live "students," participants in real estate workshops he ran, to MBC seminars attended by Woy and Lombardo. Surber attended some of these meetings. Surber testified that at one meeting, at which Woy and Lombardo were present, she asked Franklin if the program was "being run through Profit Live" because the sign-up form handed out at the meeting did not say "Profit Live," and Franklin said, "No."

In December 2001, JPI and Surber filed suit against PLI, PLP, Franklin, Woy, and Lombardo for fraud. The trial court severed the claims against PLI and

3

PLP and on February 6, 2009, rendered judgment against PLI and PLP for $1,585,127.92 (the fraud judgment).[4] The trial court also assessed sanctions against the two entities.[5] JPI and Surber amended their claims against Woy and Lombardo to seek enforcement of the judgment against them under the theory of director liability.

After a bench trial, the trial court rendered judgment as a matter of law in favor of Woy and Lombardo on all causes of action but imposed sanctions for contempt on them in the amount of $13,606.49.

The trial court made these findings of fact and conclusions of law:

## I.
## FINDINGS OF FACT

1. On or about July 27, 1999, ProfitLive, Inc. ("PLI") was incorporated.

2. As of July 27, 1999, W. Jordan Woy ("Woy") and Jay F. Lombardo ("Lombardo") were two of the three directors of PLI.

3. On or about February 13, 2001, the corporate privileges of PLI were forfeited for failure to file the required franchise tax returns.

4. As of February 13, 2001, Woy and Lombardo were no longer directors of PLI.

5. On or about May 25, 2001, Johnson Property Investments ("JPI") made a capital investment of $100,000 for a 10% interest in ProfitLive Partnership ("PLP").

6. PLP and PLI are separate corporate entities.

---

[4] *See Profitlive*, 2010 WL 1999461 at *1–2.

[5] *See id.*

4

7.      Neither Woy nor Lombardo had any ownership interest or management roles in PLP.

8.      Neither Woy nor Lombardo had knowledge of the JPI $100,000 investment in PLP.

9.      Neither Woy nor Lombardo had reason to know of JPI's $100,000 investment in PLP.

. . . .

14.     Neither Woy nor Lombardo engaged in any civil conspiracy causing damage to Surber or JPI.

15.     Neither Woy nor Lombardo aided or abetted any other party in any way that caused any damages to Surber or JPI.

16.     The attorney's fees incurred by Surber and/or JPI were not reasonable or necessary.

## II.
## CONCLUSIONS OF LAW

. . . .

2.      The "Final Judgment on Plaintiff's Motion for Summary Judgment" entered on February 6, 2009, is not a debt of PLI that was created or incurred after the date on which the corporate privileges of PLI were forfeited within the meaning of § 171.255 of the TEXAS TAX CODE.

3.      The $100,000 capital investment by JPI in PLP was not a debt of PLI within the meaning of § 171.255 of the TEXAS TAX CODE.

4.      Neither Woy nor Lombardo is indebted to Surber or JPI for any sums of money.

5.      Neither Surber nor JPI are entitled to the recovery [of] attorney's fees.

5

Surber filed a motion for new trial that was denied by operation of law. Surber then filed this appeal. Woy and Lombardo did not appeal the sanctions assessed against them.

**Analysis**

Surber's brief is not entirely clear regarding the number of issues asserted. The entire brief is set out in numbered paragraphs. The "issues presented" section of Surber's brief is comprised of paragraphs five and six, but each of these paragraphs contains subparagraphs. We read these paragraphs to set out nine separate issues. Surber's reply brief raises another issue, bringing the total number of issues asserted to ten. Surber's first four issues challenge findings of fact made by the trial court. Issues five through seven challenge the trial court's conclusions of law. The final three issues challenge rulings by the trial court.

*1. Surber's brief does not include adequate argument as to her second, third, fourth, fifth, and ninth issues.*

In Surber's second issue, she asserts that the trial court erred by finding that PLP and PLI are separate corporate entities. In her fourth issue, she argues that the trial court erred by finding that Surber's attorney's fees were not reasonable or necessary. In her fifth issue, she asserts that the trial court erred by concluding that "[n]either Surber nor JPI are entitled to the declaratory judgment relief they sought because the relief sought was nothing more than merely factual allegations which, if proven, would have entitled them to the recovery of monetary damages which they sought in their claims for conspiracy

6

and aiding and abetting." In her ninth issue, she asserts that the trial court erred by disallowing a deemed admission from her second request for admissions. Surber's brief does not include any argument or citation to relevant authority on these issues, and, thus, the brief presents nothing for review as to these issues.[6] Accordingly, we overrule issues two, four, five, and nine.

In Surber's third issue, she asserts that the trial court erred by finding that neither Woy nor Lombardo aided or abetted any other party in any way that caused any damages to Surber. Surber does not argue how the evidence shows that Woy or Lombardo aided or abetted anyone and caused damages to Surber, and she does not point to any evidence in support of such an argument. She does include some assertions in her brief about Woy and Lombardo's continued involvement with Franklin, but those assertions are in the context of whether Woy and Lombardo had continued involvement with PLI, not with their aiding and abetting Franklin or anyone else and in so doing, causing damage to Surber. Accordingly, we overrule Surber's third issue.

---

[6] *See* Tex. R. App. P. 38.1(i); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (stating that appellate court has discretion to waive point due to inadequate briefing); *AMX Enter., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 525 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g).

*2. Whether the fraud judgment is a debt for which Woy and Lombardo are liable: Surber's first, sixth, and seventh issues.*

In her first issue, Surber argues that the trial court erred by finding that as of February 13, 2001, Woy and Lombardo were no longer directors of PLI. In her sixth issue, Surber asserts that the trial court erred by concluding that the fraud judgment is not a debt of PLI that was created or incurred after the date on which the corporate privileges were forfeited within the meaning of tax code 171.255. In her seventh issue, she argues that the trial court erred by concluding that neither Woy nor Lombardo are indebted to Surber for any sum of money.

*2.1. Standard of Review.*

A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions and are reviewable for legal and factual sufficiency of the evidence to support them by the same standards.[7] Surber does not state whether she is challenging the trial court's findings for legal sufficiency, factual sufficiency, or both. In her conclusion, however, she states that the "great weight of the evidence in this case" suggests that Woy and Lombardo concocted a story to make themselves immune from the judgment. And in her reply brief, she states that she challenges the trial court's findings as against the great weight and preponderance of the evidence. Accordingly, we conclude that she

---

[7]*Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see also MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009).

8

challenges the factual sufficiency of the evidence.[8]  When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered.[9]

*2.2.  Analysis.*

*2.2.1.  Surber's sixth issue.*

We first consider Surber's sixth issue.  Surber argues in her brief that PLI's franchise tax report was due on October 24, 2000, but was not filed, and because it was not filed, PLI was delinquent under the tax code as of October 25, 2000.  And, she argues, because PLI was delinquent as of that date, Woy and Lombardo, as PLI directors, became liable for PLI's corporate debts as of that date under tax code section 171.255.[10]

Surber then argues that the term "debt" includes personal liability for fraud judgments and that the debt is considered to have been incurred when the events that gave rise to the debt occurred.  She thus argues that PLI's debt arose

---

[8]*See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g) (setting out the standard of review for factual insufficiency as "so against the great weight and preponderance as to be manifestly unjust").

[9]*Id.*; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

[10]Tex. Tax. Code Ann. § 171.255(a).

9

at the time of her investment, May 25, 2001, a time at which PLI's corporate privileges had been forfeited and Woy and Lombardo were still directors. Thus, she argues, Woy and Lombardo are personally liable.

In response, Woy and Lombardo argue that Surber made an investment in PLP, and an investment is not a debt. They further assert that the evidence supports the trial court's findings and conclusions.

Section 171.255 provides,

> If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived.[11]

That same section further provides exceptions to the director's liability, stating that

> [a] director or officer is not liable for a debt of the corporation if the director or officer shows that the debt was created or incurred:
> (1) over the director's objection; or
> (2) without the director's knowledge and that the exercise of reasonable diligence to become acquainted with the affairs of the corporation would not have revealed the intention to create the debt.[12]

Woy and Lombardo supplemented their answer in the trial court to assert that even if they "were directors in [PLI] at the relevant time, which they deny, [Surber and JPI] cannot show that [they] knew about the alleged corporate debt, or with

---

[11]*Id.*

[12]*Id.* § 171.255(c).

10

the exercise of reasonable diligence, could have known about the alleged corporate debt." The trial court found that neither Woy nor Lombardo had knowledge of the JPI investment in PLP and that they had no reason to know of the investment.

The trial court did not make an express finding about whether Woy and Lombardo knew or had reason to know of the facts giving rise to the judgment against the PLI entities, but the trial court did conclude that the fraud judgment is not a debt of PLI within the meaning of section 171.255. It also concluded that neither Woy nor Lombardo were indebted to Surber or JPI for any sum of money.

Surber argues that the trial court improperly allowed Woy and Lombardo to add the defense one day before the hearing on Surber's summary judgment motion. But she makes no argument that the trial court could not consider this defense at the bench trial. She does argue that the trial court should have granted her summary judgment, but her argument on the matter relates only to whether Woy and Lombardo should have been allowed to amend their answer the day before the summary judgment hearing and not to whether she established her right to judgment as a matter of law so as to make the trial court's denial of her summary judgment motion erroneous.[13]

As for challenging the trial court's findings on this defense, Surber does not explicitly challenge the finding that Woy and Lombardo had no knowledge of or

---

[13]*See* Tex. R. App. P. 38.1(i).

11

reason to know of JPI's investment in PLI. But she argues generally in her brief that she "will demonstrate that the great weight of the evidence would have required the trial court to come to the conclusion that Woy and Lombardo were directors liable for PLI's debts," including the $100,000 that Surber gave to Franklin, the judgment against PLP and PLI, and an order for sanctions assessed against PLP and PLI. We will construe this argument to challenge the trial court's findings on the defense.[14]

Woy and Lombardo could only be liable for the fraud judgment under section 171.255 if (1) this court determined that the judgment is a debt[15] within the meaning of section 171.255[16] and that it was created or incurred at the time that Surber's fraud claims arose, or at least while Woy and Lombardo were still

---

[14] *See* Tex. R. App. P. 38.1(f).

[15] *See* Black's Law Dictionary 462, 902 (9th ed. 2009) (defining "debt" as "[l]iability on a claim" or "a specific sum of money due by agreement or otherwise" and "investment" as "[a]n expenditure to acquire property or assets to produce revenue; a capital outlay"); *see also Taylor v. First Cmty. Credit Union*, 316 S.W.3d 863, 869 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (noting that the tax code previously contained a definition, repealed as of 2008, of the term "debt" and that under the definition, a debt is "any legally enforceable obligation measured in a certain amount of money which must be performed or paid within an ascertainable period of time or on demand").

[16] *See Williams v. Adams*, 74 S.W.3d 437, 443 (Tex. App.—Corpus Christi 2002, pet. denied) (determining that the statute's legislative history "indicates that it was not intended to apply to debts that were not 'created or incurred' through some transaction of corporate business" and that it does not apply to tort claims based on negligence).

directors,[17] and (2) Woy and Lombardo knew or should have known not only of Franklin's representations giving rise to the claim that resulted in the fraud judgment but also his intention to induce Surber to make the investment.[18] This court has not addressed the question of who has the burden to establish or negate the exception on which Woy and Lombardo rely, but the statute states that the director avoids liability if *that director* shows that one of the two exceptions applies.[19] And courts that have considered the question have held that a director relying on one of the exceptions to escape liability has the burden to demonstrate that the exception applies.[20] Assuming that the exceptions are

---

[17] *See, e.g.*, *Lucky Dawg Movers, Inc. v. Wee Haul, Inc.*, No. 05-10-00222-CV, 2011 WL 5009792, at *1–2, *6 (Tex. App.—Dallas Oct. 21, 2011, no pet.) (mem. op.) (considering whether a judgment that was rendered after corporate privileges were reinstated based on conduct that occurred while the privileges had been forfeited could constitute a debt for which a director would be personally liable and concluding that "the damages sustained as a result of Wee Haul's deceptive acts were assessed only when the jury returned its verdict," not at the time of the acts, and therefore it was not a debt within the meaning of the tax code).

[18] *See* Tex. Tax. Code Ann. § 171.255(c) ("A director or officer is not liable for a debt of the corporation if the director or officer shows . . . that the exercise of reasonable diligence to become acquainted with the affairs of the corporation would not have revealed *the intention* to create the debt.") (emphasis added).

[19] *Id.*

[20] *See In re Trammell*, 246 S.W.3d 815, 822 (Tex. App.—Dallas 2008, no pet.); *Priddy v. Rawson*, 282 S.W.3d 588, 594 n.11 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

an affirmative defense and that Woy and Lombardo therefore had the burden of proof, the evidence is not too weak to support the trial court's judgment.[21]

We will not detail all of the evidence on this point, but we briefly mention some of the testimony. Regarding Surber's investment and the circumstances leading to that investment, Woy and Lombardo both testified that when PLI was formed in 1999, they and Franklin were the only three shareholders; that they attended a shareholders' meeting in 1999 at which all three voted to remove Woy and Lombardo as directors and to divest them of their shares; and that they executed the settlement agreement in an attempt to memorialize that agreement. The two testified that they had no involvement with PLI after that meeting and believed that they had successfully removed themselves from having anything more to do with PLI.

Surber testified that she did not make the decision to invest in PLP based on any representations that Woy and Lombardo made to her; that prior to giving the money to Franklin, she had never met Woy or Lombardo; and that nothing they said or did led her to make the investment. Woy and Lombardo testified that they had nothing to do with PLP. Surber testified that Woy and Lombardo attended meetings in 2001 that were put on by Franklin and that signs posted outside the hotel conference rooms in which the meetings were held said "Profit

---

[21]*See Garza*, 395 S.W.2d at 823 (discussing factual sufficiency review on fact issues for which a party did not have the burden of proof at trial); W. Wendall Hall, *Hall's Standards of Review in Texas*, 42 St. Mary's L.J. 3, 41–42 (2010).

Live." But the evidence at trial showed that the signs only said "Profit Live" without specifying ProfitLive Inc. or ProfitLive Partnership, and in any case, Woy and Lombardo both testified that the meetings were to promote MBC and that they did not remember seeing any signs.

Surber's own evidence was that she signed a partnership agreement making her a partner in PLP and agreeing to make a $100,000 capital contribution to the partnership; that she drafted a check for $100,000 to make that investment; and that she made the check out to PLI and was given to understand that PLP did not have a bank account. The partnership agreement stated that PLP would acquire all outstanding shares of PLI. Accordingly, although the steps that Woy and Lombardo could have taken in making themselves reasonably acquainted with PLI's affairs might have apprised them of PLI's possible acquisition by PLP, such steps would not necessarily have led them to know of the representations that Franklin had made to potential PLP investors. Nothing about the check or the agreement indicated that the investment and agreement were based on fraud. To the extent that the trial court found that Woy and Lombardo established that they did not know of either Surber's investment or of Franklin's representations that gave rise to the investment and that reasonable diligence in acquainting themselves with PLI's business would not have informed them of either, the finding is not against the great weight and preponderance of the evidence.

15

As for the sanctions order, that arose from conduct during the trial on the fraud claim. The trial court did not specifically mention the sanctions order in its findings of fact and conclusions of law. But the order was based on conduct of PLI's and PLP's representatives during the earlier proceedings and was not a debt that was created or incurred through some transaction of corporate business. Accordingly, to the extent that the trial court concluded that it was not a debt for which PLI's directors should be held liable, this conclusion was not erroneous.[22] We overrule Surber's sixth issue.

### 2.2.2. Surber's first issue.

In Surber's first issue, she argues that the trial court erred by finding that Woy and Lombardo were not directors of PLI on February 13, 2001. Because we have held that, even if Woy and Lombardo were directors, they are not liable for the fraud judgment, the $100,000 investment in PLP, or the sanctions order, we overrule this issue as moot.

### 2.2.3. Surber's seventh issue.

Surber asserts in her seventh issue that the trial court erred by concluding that Woy and Lombardo are not indebted to Surber. She does not include any argument related to this issue other than her argument that Woy and Lombardo

---

[22] *See Williams*, 74 S.W.3d at 443; *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002) (setting out the standard for reviewing a trial court's conclusions of law).

are liable as directors of PLI. For the same reason that we overruled her first issue, we also overrule this issue.

*3.   Whether the trial court erred by not striking Woy and Lombardo's supplemental summary judgment evidence and denying Surber's amended summary judgment motions:  Surber's eighth issue.*

In her eighth issue, Surber asserts that the trial court erred by (1) denying her motion to strike the supplemental affidavit of Franklin, (2) denying her renewed and amended motion for partial summary judgment, and (3) denying her supplemental renewed and amended motion for summary judgment.  Regarding Franklin's affidavit, she makes no argument in her brief specifically about this evidence.  She includes in her brief an argument that the trial court erred by allowing Woy and Lombardo to supplement their answer to assert a new affirmative defense one day before the hearing on her motion for summary judgment.  But she makes no argument about Franklin's affidavit.  Accordingly, we overrule this part of Surber's eighth issue.

Regarding the rest of this issue, it, too, is inadequately briefed.  Because she moved for summary judgment on her own claims, she was required to conclusively prove all essential elements of her claims.[23]  But Surber does not set out in her brief on what grounds she was entitled to summary judgment or what evidence in the record supports the elements that she was required to

---

[23]*See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

prove.  The clerk's record in this case is over 3,000 pages long.  We are not required to search a voluminous record for evidence that supports her argument.[24]  Accordingly, we overrule the remainder of Surber's eighth issue.

*4.  The affidavit of Pat Lacy:  Surber's tenth issue (raised in a reply brief).*

In her reply brief, Surber makes the following statement:

> As Appellees seek to support their position by reference to expert witness Pat Lacy, and Counsel for Appellants timely objected to that testimony during the trial (on the basis that the statute and document spoke for themselves), Appellants add that issue to those that this Honorable Court should reverse.  The Trial Court overruled the objection, so Appellants now ask this Court to strike the testimony of Lacy.

Surber did not make this argument in her original brief; we are therefore not required to consider it.[25]  Further, Surber does not direct this court to where in the record she objected to Lacy's testimony, does not cite authority for why the trial court's admission of the testimony was an abuse of discretion,[26] and does not explain why the testimony, which is not relevant to the dispositive holding in this case, was harmful to her.[27]  Accordingly, we overrule this issue.

---

[24]*See Most Worshipful Prince Hall Grand Lodge v. Jackson*, 732 S.W.2d 407, 412 (Tex. App—Dallas 1987, writ ref'd n.r.e.).

[25]*See* Tex. R. App. P. 38.3; *In re M.D.H.*, 139 S.W.3d 315, 318–19 (Tex. App.—Fort Worth 2004, pet. denied) (declining to consider complaint first raised in reply brief).

[26]*Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000) (reviewing a trial court's evidentiary ruling for abuse of discretion).

[27]*See* Tex. R. App. P. 44.1.

**Conclusion**

Having overruled Surber's ten issues, we affirm the trial court's judgment.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, MEIER, and GABRIEL, JJ.

DELIVERED:  April 30, 2014